UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20216-CR-ALTONAGA/Reid

UNITED STATES OF AMERICA,

v.

ALTAVIOUS POWELL,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND DEFENDANT'S STATEMENT

This cause is before the Court on Defendant, Altavious Powell's Motion to Suppress Physical Evidence and Defendant's Statement. [ECF No. 33]. The Motion was referred to the Undersigned by Chief United States District Judge Cecilia M. Altonaga. [ECF No. 34]. For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion be **DENIED**.

## BACKGROUND

On May 24, 2022, Defendant was charged in a single count indictment with a violation of 18 U.S.C. § 922(g)(1). [ECF No. 3]. On August 26, 2022, Defendant filed the instant Motion. [ECF No. 33]. The Government filed its Response on September 12, 2022. [ECF No. 46].

The Undersigned held an evidentiary hearing on September 15, 2022. *See* [ECF No. 47]. The Government presented as witnesses Miami Dade Police Department Detective Kimberly Nanney and Miami Dade Police Department Detective Kevin Font. Defendant called no witnesses. The matter is ripe for adjudication.

## **FINDING OF FACTS**

Defendant was arrested on March 31, 2022. The arresting officer, Miami Dade Police Department Detective Kimberly Nanney, testified at the Suppression hearing she apprehended Defendant based on his alleged involvement in a September 17, 2018, incident.

On September 17, 2018, around 5:00 a.m., D.M. (the "victim") agreed to give a ride to a man she believed to be an acquaintance of her brother. In exchange, she asked him to pay for gasoline for her car and he agreed to do so. At the gas station, the man asked the victim to first park near the back of the gas station so he could urinate. Once she parked, however, he attempted to remove her clothing and molest her. She screamed and fought him off. The victim told law enforcement the man took her car keys, got out of the passenger side door, opened her driver's side door, and got on top of her.       A witness, identified at the suppression hearing only as "Mr. Bryant," was nearby, heard the victim's pleas, came to the car, and warned the man that the police were on the way. The victim used the distraction to exit her car, as the man got into the driver's seat and fled in her car.

Police investigators later found her car unoccupied approximately three miles from where the assault occurred, and .2 miles from where Defendant and his girlfriend lived at the time. The car was processed for fingerprints and DNA evidence the same day. Additionally, surveillance footage from a video camera near where the victim's car was abandoned captured footage of a man getting out of the car, taking off his shirt and using his shirt to wipe down the interior seats and door handles and the exterior of the car before walking away. Not surprisingly, the crime laboratory reported that there were no latent fingerprints of value inside of the car.

The victim and Mr. Bryant were interviewed by law enforcement right after the incident[1], and gave somewhat conflicting descriptions of the assailant. The victim described him as being 5'6'', weighing 230-245 pounds, and wearing black clothing with a white shirt. Mr. Bryant, on the other hand, described the assailant as being 5'10'', weighing 200 pounds, and wearing all black.

Detective Nanney testified at the suppression hearing that over two years later, in December 2020, she received a report from the Forensic Services Bureau of a DNA match from the victim's car. The report, notifying law enforcement of an investigative lead, provided there had been a mixture of DNA profiles found in the car, including a "moderate match" for Defendant. After receipt of the report, Detective Nanney obtained a photograph of Defendant. Detective Nanney noted Defendant's photograph and physical description matched the man wiping down the victim's car on the surveillance video.

Further, Detective Nanney followed up with the victim and Mr. Bryant. Following internal procedures, a detective not assigned to the case presented the victim with a photo array which included Defendant's photograph. Detective Nanney testified that after the initial interview on the night of the assault, the victim became reluctant to assist with the investigation and, in fact told Detective Nanney that she was not sure whether she wanted to "go forward with [the case]." Although the victim agreed to view the photo array, she failed to identify anyone. When a detective presented Mr. Bryant[2] with the photo array, however, he identified Defendant's photograph as the assailant and stated that it "looks just like him!"

---

[1] The victim's and Mr. Bryant's conversations with law enforcement shortly after the incident were captured on Miami Dade Police Department Officer Nekoda Leon's body-worn camera. The Court has viewed the footage which was introduced during the Suppression hearing as Defense Exhibit A. *See* [ECF No. 52].
[2] At the time the photograph lineup was presented to Mr. Bryant, he was incarcerated and facing felony charges.

Following Mr. Bryant's identification, law enforcement entered an internal probable cause to arrest message and issued BOLO/Wanted Flyers across local police departments. Despite this, and Detective Nanney's further attempts to locate Defendant, he evaded detection for over a year.

That changed on March 31, 2022. On that date Defendant's car was detected on a license plate reader. Detective Nanney was notified and testified that she responded to the area in which Defendant's car had been detected. She found Defendant driving the car, and noted he was the car's sole occupant. Knowing Defendant was a convicted felon, she called for backup. Detective Nanney continued to follow the car as she waited for backup to arrive.

Defendant drove into a parking lot of a strip mall, backed into a parking space and began exiting his car. Detective Nanney immediately pulled her own car in front of Defendant's car to stop him from driving away. Using her open car door as a shield, in case he was armed, she ordered Defendant to get on the ground. She testified that he did not initially comply and repeatedly reached toward the open door of his car toward the floorboard. After Detective Nanney screamed her directive several times pointing her gun at him, however, Defendant complied.

A backup officer arrived, and handcuffed Defendant on the ground. Detective Nanney was then able to come around her car door and observed through Defendant's driver's side open door a firearm in plain view on the driver's side floorboard of Defendant's car.[3] Detective Nanney did not search the car at that time. Instead, she had Detective Kevin Font, who arrived on scene after Defendant had been apprehended, photograph the interior of the car as observed and sealed the car and had it towed and impounded. She then obtained a search warrant reasoning that: "you can never go wrong with a search warrant." [ECF No. 53 at 83:17–18].

---

[3] Although Detective Nanney stated she observed the firearm due to a search incident to arrest in her arrest report, she asserts she did not search the car at the scene of the arrest.

The state court search warrant sought: (1) firearms, ammunitions, and other weapons; (2) serological, trace, and ballistics evidence; (3) all personal effects belonging to Defendant; and (4) all properly belonging to D.M. The warrant was granted. The only item seized during the execution of the warrant was the firearm Detective Nanney had seen during the arrest.

The government presented evidence at the hearing that the firearm was loaded, it had been reported stolen, and that Defendant's DNA was found on the firearm and matched the DNA found in the victim's car.

## **DISCUSSION**

Defendant makes three main arguments in support of his Motion to Suppress. First, he alleges that Detective Nanney lacked probable cause to arrest him. Second, that the arresting officer lacked justification to conduct a warrantless search of Defendant's car incident to his arrest, and as such the firearm later recovered is the fruit of an unlawful search and should be suppressed. Lastly, although Detective Nanney obtained a search warrant before seizing the firearm, Defendant argues Detective Nanney's affidavit in support of the search warrant contained material omissions and exaggerates the probative value of the evidence cited in support of the warrant. The Court will address each argument in turn.

As an initial matter, the Court has weighed the testimony of the Government's primary witness Detective Nanney. The Court has taken into account the consistencies in the testimony, and her demeanor on the witness stand. The Court finds Detective Nanney to be a credible witness and accepts her testimony as to what transpired on both September 17, 2018, and on March 31, 2022.

Detective Nanney's testimony was consistent throughout the hearing. Importantly, Detective Nanney explained the steps she took during the investigation to build probable cause to

support an arrest. She used the DNA match as only one factor in her investigation. She also spoke with the victim and the witness about the incident and their description of the assailant, reviewed the video of the person wiping down the victim's car, and had the photo array shown to the victim and the witness. She also detailed how she followed departmental procedures designed to ensure the integrity of the investigation by having detectives who were not assigned to the case prepare and present the photo array to the victim and the witness.

Further, Detective Nanney readily explained any supposed inconsistencies between her testimony and reports she had made, or the information she omitted from her affidavit. By way of example, Detective Nanney explained that, although she used the term "search incident to arrest" in her arrest report, and  understood the term has a specific legal meaning, the inclusion of the term was a mistake because she did not search Defendant's car at the scene of arrest. Rather, Detective Nanney explained she observed a firearm on the driver's side floorboard of Defendant's car because the door had been left open by Defendant during the arrest. Detective Nanney testified that although she believed seeing the firearm in "plain view" afforded her sufficient probable to cause to search the car at the time or arrest, she chose to get the warrant instead.

## I.      Probable Cause for Arrest

In arguing that Detective Nanney lacked probable cause to support the arrest, Defendant contends "[h]er probable cause determination was dependent on two, unreliable pieces of evidence." [ECF No. 33 at 8]. First, Defendant avers that the partial DNA match taken from the victim's car was insufficient to support probable cause because, in short, "a 'moderate' DNA match is just that: of a limited quality … [and] risks the inclusion of individuals who have no genetic relationship to the subject profile." [*Id.*]. Second, Defendant challenges the witness's identification of the Defendant from the photo array. [*Id.* at 9–10]. Specifically, Defendant argues

Mr. Bryant only observed the alleged assailant for a short period of time in poorly lit conditions, failed to accurately identify what clothes the assailant was wearing, his description of the events differed over time, and his description of the assailant differed from the victim's. [*Id.*].

The Fourth Amendment protects individuals against unreasonable searches and seizures and provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  Generally, the Fourth Amendment dictates that warrantless "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S., 332, 338 (2009) (internal citation omitted).

Whether there is probable cause to support an arrest depends on "whether the arresting officer's actions were objectively reasonable based on the totality of the circumstances." *Hardigree v. Lofton*, 992, F.3d 1216, 1230 (11th Cir. 2021) (internal quotation marks and citation omitted). An arrest is reasonable when "the facts and circumstances within the officer's knowledge, of which he or she has reasonable trustworthy information, would cause a prudent person to believe, under the circumstance shown, that the suspect has committed, is committing, or is about to commit and offense." *Id.* (internal quotation marks and citation omitted). Notwithstanding, the "officer's own subjective opinions or beliefs about probable cause are irrelevant, because it is an objective standard." *United States v. Street*, 472 F.3d 1298, 1305 (11th Cir. 2006) (internal quotation marks and citation omitted). "Along with reliable or corroborated tips, the observations and experiences of law enforcement officers working a case must be weighed

as part to the totality of the circumstances that might create probable cause for an arrest." *United States v. Gonzalez*, 969 F.2d 999, 1003 (11th Cir. 1992).

In his argument regarding the probative value of the DNA test, Defendant stresses that the DNA report provided that "any possible connection or involvement of the individual to the case must be determined through further investigation." [*Id.* at 8]; [ECF No. 33-1 at 4]. And, Detective Nanney did just that. Detective Nanney did not arrest Defendant solely because of the DNA report. She interviewed Mr. Bryant, the witness of the alleged assault, who identified Defendant as the perpetrator. It was supplemented through witness statements, investigation into the subject incident, and the surveillance footage of the individual abandoning the victim's car on the date of the assault. Therefore, its probative value is properly evaluated in connection with the other evidence.

Defendant points to a number of different things which call into question Mr. Bryant's credibility, and therefore the credibility of his identification of Defendant. Detective Nanney, however, was not required to "sift through conflicting evidence" to determine Mr. Bryant's credibility. *See Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (noting that to establish probable cause arresting officers "are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed") (quoting *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002), *abrogated on other grounds by Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018)). Defendant has cited nothing sufficient to render Detective Nanney's reliance on Mr. Bryant's identification of Defendant objectively unreasonable.

Taking the partial DNA match, Mr. Bryant's identification, and the surveillance footage together, there was probable cause under the totality of the circumstances for Detective Nanney to

arrest Defendant. Perhaps Defendant's argument would be better taken if Detective Nanney had relied *solely* on Mr. Bryant's identification or the DNA Report. That is not the situation the Court is presented with. Rather, when viewed in conjunction with one another, these two factual bases are sufficient to support Detective Nanney's assertion of probable cause to arrest Defendant. So, having established there was probable cause to support Defendant's arrest, the Court must consider whether the search of Defendant's car which uncovered the firearm was proper.

## II.      Probable Cause for the Search Warrant

Defendant's primary argument concerning the suppression of the firearm is that Detective Nanney discovered the firearm as part of an improper search incident to arrest, and therefore the firearm is the fruit of an unlawful search. Before this argument can be addressed, the Court must answer a much more basic question: Was there even a search incident to arrest? Detective Nanney's testimony makes clear there was not.

In her arrest report, Detective Nanney stated that she observed the firearm on the floorboard of Defendant's car as part of a search incident to arrest. During her testimony at the suppression hearing, Detective Nanney acknowledged that in doing so, she incorrectly used a legal term of art. This choice of words serves as the crux of Defendant's argument. Detective Nanney's testimony regarding the arrest clarified the facts surrounding the seizure of the firearm and ammunition. While ordering Defendant to the ground during the arrest, Detective Nanney *observed* the firearm on the floorboard of Defendant's car. Detective Nanney testified that the driver's side door of Defendant's car was open, and the firearm in plain view. Detective Nanney was lawfully in place during the arrest, and could lawfully seize the firearm, in light of Defendant's prior felony convictions.

Probable cause would have supported her warrantless seizure of the firearm under the plain view doctrine. "The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F. 3d 1276, 1290 (11th Cir. 2006). Before an object can be seized, however, an officer "must have probable cause to believe that the object in plain view is contraband." *Id.* (citation omitted). She knew that Defendant was a convicted felon and, as such, could not lawfully possess a firearm.

However, the Court need not address the Defendant's search incident to arrest argument, or the Government's other proposals for denying Defendant's Motion such as the automobile or inventory search exceptions to the warrant requirement. Detective Nanney's decision to obtain a search warrant makes that unnecessary. What is left to review are the supposed omissions in Detective Nanney's affidavit in support of the search warrant.

"An affidavit in support of a warrant 'should establish a connection between the defendant and the property to be searched and a link between the property and any criminal activity.'" *United States v. Murray*, 625 F. App'x 955, 957 (11th Cir. 2015) (quoting *United States v. Mathis*, 767 F.3d 1265, 1267 (11th Cir. 2014), *abrogated on other grounds by Lockhart v. United States*, 577 U.S. 347 (2016). In "assessing whether the alleged false statements and omissions [in a search warrant] were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading." *See United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009) (citation omitted). "[E]ven intentional or reckless omissions will invalidate a warrant *only* if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.* (quoting *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997))

(emphasis added). "Looking only at the remaining portions of the affidavit, the court will then determine whether including the omitted facts would have prevented a finding of probable cause." *Id.* (citation omitted). "The defendant bears the burden of showing that, absent those misrepresentations or omission, probable cause would have been lacking." *Id.* (internal quotation marks and citation omitted).

The omissions Defendant cites are that the victim did not identify Defendant in the photo array she was presented with, and Detective Nanney failed to include the surveillance footage showing an individual wiping down the victim's car close to where the 2018 incident took place. Additionally, Defendant contends that in the affidavit Detective Nanney exaggerated the probative value of the DNA Report by omitting that it provided only a "moderate" match for Defendant.

These omissions (or purported exaggerations), however, do not negate the other facts which established probable cause for the arrest. Had Detective Nanney included these omitted facts in the affidavit and noted there was only a "moderate" DNA match for Defendant, there still would have been probable cause for the arrest. In fact, some of this evidence, such as the surveillance footage, may have bolstered the probable cause underlying the search warrant.

The affidavit describes the facts which provided Detective Nanney with probable cause to arrest Defendant, which we have already deemed were sufficient. The affidavit then explains that during the arrest Detective Nanney "observed on the driver's floorboard a loaded … firearm" and that Defendant's car was then secured and sealed pending a search warrant. *See* [ECF No. 33-2 at 7]. Having noted that Defendant was a convicted felon at the time of the arrest (and was therefore prohibited from possessing a firearm or ammunition), this provided probable cause to search the car. Inclusion of the omitted facts in the affidavit would not have changed this.

Even if portions of the search warrant related to any of the victim's possessions being found in the car were overly broad or lacked probable cause (as Defendant argues), the solution is not to invalidate the whole warrant, but to excise the improper portions. *See United States v. Derbouze*, No. 14-20159-CR-MORENO, 2014 WL 2918670, at *6 (S.D. Fla. June 26, 2014), *aff'd* (Sept. 4, 2015) (citing *United States v. Cook*, 657 F.2d 730, 734–35 (5th Cir. 1981)). Certainly, the portions of the search warrant relating to the firearm, or any serological evidence are in no way overbroad. Accordingly, Defendant has failed to show that there was insufficient evidence to support the probable cause findings underpinning the search warrant.

Finally, Defendant challenges Detective Nanney's claim that the car door was open and that the firearm was in plain view when she arrested him. To rebut this claim, Defendant points to an excerpt from footage captured after his arrest where he is making telephone calls in the backseat of a police car. *See* [ECF No. 50, Ex. 7].  During one of the calls Defendant can be heard saying that "when [the police] came, I end up [sic] locking my door." In essence, and as defense counsel argued in closing, his contention is that Defendant "got out of his car, closed the door and locked it" immediately before his arrest. [ECF No. 54 at 49:22–24]. For this Court to agree with Defendant, it would have to find Defendant's unclear statement in the police car undercuts Detective Nanney's sworn testimony during the hearing. As previously discussed, this Court found Detective Nanney to be a credible witness, her testimony consistent, and explanation of the facts surrounding the arrest clear. Additionally, Detective Nanney had no interest in the outcome of the suppression hearing, while Defendant clearly did. Thus, the Court finds his effort to impugn Detective Nanney's credibility unpersuasive. Moreover, when asked during his post-*Miranda*[4] questioning why he was reaching into the car and whether he was reaching for the firearm when

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

he was commanded to get onto the ground, Defendant did not deny that he had reached into the open car. Instead, he laughed and asked, "what gun." [ECF No. 54 at 22:5–10]. To find that Detective Nanney lacks credibility, Defendant would have to provide clear evidence that he closed and locked his car door prior to Detective Nanney issuing her commands. He has failed to do so.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that Defendant, Altavious Powell's Motion to Suppress Physical Evidence and Defendant's Statement [ECF No. 33] be **DENIED**.

Objections to this Report may be filed with the district judge within **FIVE** (5) days of receipt of a copy of the Report. The Court has shortened the usual fourteen-day objection period as both parties indicated at the suppression hearing that a five-day objection period was sufficient. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 20th day of September, 2022.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:   **Chief United States District Judge Cecilia M. Altonaga;**

      **All Counsel of Record**